FARM BUREAU LUMBER CORPORATION *v.* STATE
FOR USE OF SALINE COUNTY.

4-8052                                    199 S. W. 2d 593

Opinion delivered February 10, 1947.

Rehearing denied March 10, 1947.

*Kenneth C. Coffelt* and *Wm. J. Kirby,* for appellant.

GRIFFIN SMITH, Chief Justice. Farm Bureau Lumber Corporation, chartered by Indiana, is authorized to do business in Arkansas and operates with principal domestic offices at Benton. It uses trucks and tractors on highways and elsewhere. Charles O. Smithers is County Judge and Chairman of the County Highway Commission.[1] He

---

[1]Act 379, approved March 17, 1939.

is charged with official responsibility for maintaining
County roads. One such road was used by appellant in its
logging operations, in consequence of which damage
amounting $3,000 was alleged. Appeal is from a judg-
ment of $1,500 for the County.

The motion for a new trial contains forty-two assign-
ments, most of which are not argued. Fifteen instruc-
tions were given and refused. Most have not been ab-
stracted. Result is a presumption that errors complained
of were cured by other instructions unless the vice is
inherent, hence incapable of correction.

Judge Smithers testified that Kirk Road, in respect
of which the damage occurred, was built and gravel-
surfaced by the County with WPA aid, and that its com-
pletion represented "enormous sums of money." The use
by appellant of cleat-treaded tractors and other heavy
machinery, such as trucks, etc., caused unusual deteriora-
tion, necessitating expenditures equal to the sum claimed
as damage, and created inconvenience to the traveling
public, including delays because of road blockage, un-
usual care in driving on account of ruts and holes, partial
destruction of hard surfaces, and other hindrances inci-
dental to 200 cars per day operating over the fourteen-
mile stretch, seven miles of which were used by Farm
Bureu in its logging movements.

At one point the highway was used as a base for
pulling heavy logging trucks over nearby slippery
ground. The units were driven off the roadway and
utilized in such a way that a caterpillar tractor and other
mobile machinery weighing, with load, 35,000 pounds, had
to be used to supply required power. The caterpillar
was frequently turned on the surfaced road by the usual
process of locking the tread on one side and driving the
opposite "track." The tracks were built in sections form-
ing partially flexible endless metal belts treaded with
steel extensions designed to grip the ground in order to
supply greater traction, and prevent skidding.

Appellant concedes that machinery was used without
obtaining from the County Judge authority mentioned in

§ 7151 of Pope's Digest; and, while witnesses for Farm Bureau contend that little if any damage was directly caused by the operations, it is admitted that the motor units were used during wet weather. Another admission is that Farm Bureau management knew Judge Smithers was endeavoring to get in touch with its agent for the purpose of discussing the use then being made of Kirk Road, but the witness (H. C. Church) failed to call the County Judge by telephone after having been informed regarding matters the official sought to adjust. Clear inferences to be drawn from acquiescent comments by Church on cross-examination are that the Corporation needed daily supplies of logs for its mills; that a shut-down for want of raw material would be expensive, and Mr. Church did not want to talk with Judge Smithers because the latter had been insistent upon preservation of the road.

It is in evidence that logs, large limbs, or heavy saplings, were cut and dumped into roadway drains to facilitate truck and tractor movements in leaving the paved surface and in removing timber from adjacent lands; that in other respects ditches were filled while trailways were being opened, thus diverting surface water; also that holes were left in the road, gravel was cut through to an extent necessitating rebuilding, and overflow due to interference with drainage resulted in seepage through highway structure.

We think a question was made for the jury regarding damage, and that the verdict is supported by substantial evidence.

It is urged, however, that a condition precedent to civil liability is that the person proceeded against must first have been convicted of a violation of § 1 of Act 222, approved October 20, 1919; Pope's Digest, § 7151. Reliance is placed upon § 5 of Act 222 (Pope's Digest, § 7155) where it is provided that "In addition to the penalty hereinabove prescribed, . . . the person convicted shall be liable in a civil action for all damage occasioned or caused by such violation."

What is such violation? Section 1 prohibits ". . . the using, driving or operating upon any improved hard-surfaced public highway of the State of any tractor, truck, automobile, or other vehicle having corrugated, spiked, jointed or other rough-surfaced metal tires" without license. The license permits "use or operation" of such vehicles, not the right to damage public property. It is. true that by § 5 civil liability is made cumulative as to the person convicted of violating the prohibitory portions of the Act; but the criminal liability created by § 4 arises when one without authority makes use of a hard-surfaced public highway, irrespective of damage to the road.

A cause of action for injury to a highway or structures incidental to it is conferred by Act 300, approved March 23, 1937. Pope's Digest, § 6809. Section 150 of the Act, subdivision (a), provides that "Any person driving any vehicle, object, or contrivance upon any highway structure shall be liable for all damage which said highway or structure may sustain as a result of any careless, negligent, or illegal operation, driving, or moving of such vehicle, object, or contrivance, or as a result of operation, driving, or moving any vehicle, object, or contrivance of excessive width or weight in excess of the maximum weight in this Act, even though authorized by a special permit. . . ."

The question of excessive weight was submitted to the jury in a circumstantial manner, but the testimony was nevertheless sufficient to inform practical men of what the plaintiff alleged was being done. Act 300 provides for certain weights in relation to tire sizes, both as to single and double mountings when either low- or high-pressure pneumatic tires are used. The computation and distribution of load with respect to axle is somewhat complicated; but if it be admitted that the plaintiff failed to minutely detail in pounds an excess load and improper distribution, the fact remains that effect of operations, including obstruction of ditches and adjacent highway drains, was enough to satisfy any reasonable man's mind that using the roadway as a base for logging operations

as the testimony disclosed caused the damage, and accelerated deterioration; and it amounted to an appropriation of the public's property.

It is insisted that prejudicial testimony was admitted; but, as has been shown, appellant relies upon what it thought to be inherently incorrect instructions, and did not abstract others. Since, because of Act 300 of 1937, the position cannot be sustained, judgment must be affirmed.